IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIAM MARK McGHEE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-072 |
| | ) | (Formerly CR 115-107) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Jesup, Georgia, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

### I.  BACKGROUND

#### A.  Indictment

On December 3, 2015, the grand jury in the Southern District of Georgia charged Petitioner and three co-defendants in a thirteen-count indictment. United States v. McGhee, CR 115-107, doc. no. 3 (S.D. Ga. Dec. 3, 2015) (hereinafter "CR 115-107"). Along with naming Petitioner in two forfeiture allegations, the grand jury charged Petitioner in six counts: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) or 500 grams or more of a mixture of methamphetamine (Count

One); distribution of methamphetamine (Counts Five and Six); possession with intent to distribute methamphetamine (Counts Seven and Eight); and possession of a firearm during a drug trafficking crime (Count Ten). Id. As originally charged, Petitioner faced a statutory sentence of not less than ten years nor more than life imprisonment on Count One, as well as not less than five years and up to life imprisonment, *consecutive* to any other sentence, on Count Ten. CR 115-107, doc. no. 4. The Court appointed attorney Alex M. Brown under the Criminal Justice Act to represent Petitioner. Id., doc. no. 59.

### B. Agreement to Plead Guilty

On March 3, 2016, Petitioner appeared with counsel and pled guilty to the lesser included offense of the conspiracy charged in Count One. Id., doc. nos. 117, 124-26. The plea agreement stipulated the offense involved at least fifteen kilograms of methamphetamine (mixture) but fewer than 45 kilograms of methamphetamine (mixture). Id., doc. no. 126, ("Plea Agreement"), p. 4. In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id. at 3-5.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

That beginning on or before January 2013, the exact beginning date being unknown to the Grand Jury, and continuing until the return of this indictment, in McDuffie and Richmond Counties in the Southern District of Georgia, the District of South Carolina, and elsewhere, the defendant herein: did

> knowingly and intentionally combine, conspire, confederate, and agree together with other persons known and unknown, to commit certain offenses against the United States, that is, to distribute and to possess with the intent to distribute 5 grams or more of methamphetamine (actual) or 50 grams or more of methamphetamine (mixture), a Schedule II controlled substance, in violation of Title 21, United states Code, Sections 841(a)(1), (b)(1)(B) and 846.

Id. at 2. With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 9.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 5. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 6. By signing the Plea Agreement, Petitioner additionally attested Mr. Brown had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 216 ("Rule 11 Tr."), pp. 3, 5. Judge Hall reviewed all the charges against Petitioner in the indictment, as well as the two forfeiture allegations against him. Id. at 5-6. Petitioner confirmed he had as much time as he needed to go over the charges with Mr. Brown. Id. at 6. Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Brown and that he

had read and reviewed the Plea Agreement with counsel before signing it. Id. at 7, 9-10, 13-14.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 7-9. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 11. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 11-12.

Judge Hall reviewed the lesser included offense to which Petitioner was pleading, as well as the stipulated drug amount and the statutory penalty of not less than five nor more than forty years of imprisonment. Id. at 10-12. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $ 5 million fine and four years of supervised release after completion of the term of imprisonment. Id. at 12, 14. Judge Hall also explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. at 13-15. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 14-15. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence. Id. at 15.

4

Next, Judge Hall heard a factual basis for the guilty plea from DEA Task Force Officer Joel Danko. Id. at 16-21. TFO Danko testified Petitioner first came to the attention of law enforcement officers in April of 2014, when controlled purchases of methamphetamine from Petitioner led to the execution of a search warrant, discovery of a small amount of methamphetamine, and an opportunity for Petitioner to cooperate in a case against a source who had been supplying methamphetamine weekly to Petitioner. Id. at 17-18. However, after cooperating on that one case, Petitioner grew his distribution network to the point of obtaining between two to four kilograms of methamphetamine and marijuana at a time to supply up to seven people with drugs. Id. at 18-20.

At the time of his arrest forming the basis for his federal indictment, Petitioner had a bag containing approximately one pound of crystal methamphetamine. Id. at 20. TFO Danko further testified Petitioner had been supplying Joseph Norman, Jonathan Ryder, Cecil Hill, Rachel Padgett and Dustin Hall with methamphetamine. Id. at 20-21. Petitioner stated to Judge Hall he had no disagreement with anything TFO Danko had recounted and admitted his participation in the conspiracy charged in Count One of the indictment. Id. at 21. Petitioner also told Judge Hall he was guilty of, and wanted to plead guilty to, the lesser included offense of Count One of the indictment. Id.

Judge Hall then summarized the proceedings as follows:

> With the entry of the plea, the court finds that the [Petitioner] is competent. He fully understands the charge against him. There is an independent factual basis supporting his plea of guilt[y] on this offense. He knows the statutory punishment, including the mandatory minimum punishment, that could be imposed on the charge, and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that [Petitioner's] decision to plead guilty this morning was voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises in the Plea Agreement. Therefore,

> [Petitioner's] plea is accepted, and I now adjudge him guilty of the lesser
> included offense of count one of the indictment based upon that plea.

Id. at 22.

### C. Sentencing

The United States Probation Office then prepared a PSI which set Petitioner's Total Offense Level at forty-one, Criminal History Category at I, and Guidelines imprisonment range at 324 to 405 months. PSI ¶¶ 36, 40, 58. Because of the stipulated drug quantity in the Plea Agreement, the base offense level under U.S.S.G. § 2D1.1 was thirty-six. PSI ¶ 26. That base level was increased three times for an adjusted offense level of forty-four: (1) two levels under § 2D1.1(b)(1) for possession of a dangerous weapon (two firearms recovered in execution of search warrant at Petitioner's residence); (2) two levels under § 3B1.1 and § 2D1.1(b)(15)(E) for an aggravating role and offense committed as part of a pattern of criminal conduct engaged in as a livelihood; and (3) four levels under § 3B1.1(c) for operating as an organizer, leader, manager, or supervisor in the criminal activity. PSI ¶¶ 27, 28, 30. The adjusted offense level was reduced three points for Petitioner's acceptance of responsibility. PSI ¶¶ 34-36. The statutory maximum term of imprisonment for Petitioner's offense was forty years. CR 115-107, doc. no. 4, p. 2; PSI ¶ 57. Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Ten dismissed as part of the Plea Agreement, the statutory penalty would have been not less than five years and up to life imprisonment, consecutive to any other sentence. CR 115-107, doc. no. 4, p. 3; PSI ¶ 59.

Petitioner raised three objections to the PSI based on the three enhancements applied to the base offense level. See PSI Add.; CR 115-107, doc. no. 217, ("Sent. Tr."), p. 4. At sentencing, Petitioner withdrew two of those objections, but argued the third objection

regarding the enhancement for Petitioner's leadership role.[1] Upon consideration of Petitioner's objection, the undisputed facts in the PSI, and the testimony from TFO Danko at sentencing as to the number of people involved in the criminal activity, Judge Hall overruled the objections and adopted the factual statement of the PSI and the application of the advisory Guidelines as his own findings of fact. Id. at 4-24. Mr. Brown then requested Judge Hall consider a downward departure from the Guidelines range based on Petitioner's young age, lack of criminal history, and non-violent nature of the offense. Id. at 25. Petitioner declined to make a statement. Id. Judge Hall imposed a term of imprisonment of 375 months. Id. at 27; CR 115-107, doc. no. 163.

Judge Hall explained his reasoning as follows:

> The Court has carefully, as it previously mentioned, considered the 18 U.S.C. § 3553(a) factors. This court has specifically considered the nature and circumstances of the offense and the history and characteristics of [Petitioner]. The Court has also considered the need to impose a sentence to reflect the seriousness of this crime and to provide just punishment for the offense, to promote respect for the law, to afford adequate deterrence from criminal conduct[], and to protect the public from further crimes of [Petitioner].
>
> [Petitioner] was the organizer and leader of a significant drug conspiracy that began in January of 2013. Investigation revealed that [Petitioner's] organization under his direction distributed large amounts of methamphetamine to multiple individuals within the Southern District of Georgia.
>
> [Petitioner] was arrested on state charges on May 9th of 2014 in connection with his involvement in this conspiracy. Following his arrest on state charges, [Petitioner] agreed to cooperate with authorities. However, immediately following the beginning of his cooperation he continued to distribute and traffic in methamphetamine within the Southern District of Georgia.

---

[1]Mr. Brown clarified the enhancement for criminal livelihood required the enhancement for the leadership role, so the objection on the livelihood enhancement would only be argued if Judge Hall determined the leadership enhancement should not be applied. Sent. Tr. 4.

7

>       It is clear to this court [Petitioner] has no respect for the law and despite his arrest and being offered an opportunity to make things right, continued to be involved in the illegal drug business and clearly involved in distributing drugs that have a detrimental effect upon the individuals living within this community and district. The fact that [Petitioner] was not deterred by that initial arrest is a very significant fact to this court.
>
>       Upon considering all of the above factors, the sentence, again, above the middle of the advisory guideline range is imposed in this case.

Sent. Tr. 28.

In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### D.     § 2255 Proceedings

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

(1)     His guilty plea "was not knowingly, intelligently, nor voluntarily entered" because Mr. Brown provided ineffective assistance of counsel in the following ways:

(a) failed to show Petitioner the discovery material and advise him about the evidence the government planned to present against him at trial;

(b) failed to advise Petitioner about any defenses "potentially available" to the charges; and

(c) failed to show Petitioner a copy of the Sentencing Guidelines to validate the estimate of a sentence of seventeen to twenty years, thereby resulting in coercion to sign the Plea Agreement.

(2)     Counsel provided ineffective assistance at sentencing by failing to request a downward departure from the advisory Guidelines range.

(3)     In an improper effort to insulate himself from future ineffective assistance claims, counsel forced Petitioner to sign the Post Conviction Consultation Form waiving his right to collaterally attack his conviction and sentence based on such claims.

(See generally doc. no. 1.)

8

## II. DISCUSSION

In Ground Three of the § 2255 motion, Petitioner alleges Mr. Brown improperly forced Petitioner to sign the Post Conviction Consultation Form waiving his right to collaterally attack his conviction and sentence based on claims of ineffective assistance of counsel. (Doc. no. 1, p. 9.) Ground Three is moot because Respondent has disavowed any reliance on that waiver, (doc. no. 4, p. 19), and the Court considers the merits of Grounds One and Two below.

### A. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do

9

with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal

quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

**B. Petitioner Has Not Established He Is Entitled to Relief on Ground One Based on His Claims Concerning Mr. Brown's Pre-Plea Representation.**

Petitioner asserts in Ground One his guilty plea "was not knowingly, intelligently, nor voluntarily entered" because Mr. Brown: (a) failed to show Petitioner the discovery material and advise him about the evidence the government planned to present against him at trial; (b) failed to advise Petitioner about any defenses "potentially available" to the charges; and (c)

11

failed to show Petitioner a copy of the Sentencing Guidelines to validate the estimate of a sentence of seventeen to twenty years, thereby resulting in coercion to sign the Plea Agreement. As discussed below, the record establishes Petitioner's guilty plea was knowingly and voluntarily entered, and Petitioner's claims about Mr. Brown's pre-plea representation form no basis for relief.

### 1. Petitioner's Guilty Plea Was Knowing, Voluntary, and Binding.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed all the charges raised against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction. Rule 11 Tr. 5-6, 10, 15-16. Petitioner testified he understood this information. Id. at 6-7, 16. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 7-9. Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement. Id. at 3, 11-12.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained the statutory minimum sentence of five years and statutory maximum sentence of forty-years for conviction of the lesser included offense

13

of Count One to which Petitioner was pleading guilty. Id. at 12. Finally, Petitioner also testified he had enough time to discuss the charges with Mr. Brown and was satisfied with the help he had received from him. Id. at 6-7, 9-10; see also Plea Agreement, p. 10 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown a reasonable probability, that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See Dominguez Benitez, 542 U.S. at 83.

Thus, the Court turns to Petitioner's claims in Ground One concerning Mr. Brown's representation prior to the point of Petitioner's appearance before Judge Hall to enter his guilty plea.

### 2. Petitioner's Conclusory Claims In Ground One (a) and (b) Form No Basis for Relief.

In Ground One (a) and (b), Petitioner claims Mr. Brown failed to show Petitioner the discovery material, advise him about the evidence the government planned to present against him at trial, or advise Petitioner about any defenses "potentially available" to the charges. (Doc. no. 1, p. 5.) Petitioner's allegations about Mr. Brown's alleged failure to review the discovery material and discuss the evidence that would be available for use at trial are belied by his sworn assertions to Judge Hall that he had as much time as he needed to review the charges with Mr. Brown and that he was satisfied with the assistance he had received from Mr. Brown. Rule 11 Tr. 7, 9-10. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v.

14

Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Likewise, by signing the Plea Agreement, Petitioner attested Mr. Brown had "represented him faithfully, skillfully, and diligently, and he [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Plea Agreement, p. 7. Never did Petitioner mention to Judge Hall at the change of plea proceedings or at sentencing that he had not seen the discovery or reviewed the evidence against him in the case. Nor did he ever complain Mr. Brown had not reviewed any potential defenses to the charges. Even now in these collateral proceedings, Petitioner does not assert he told Mr. Brown about any information tending to rebut any of the charges in the indictment.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

Strickland, 466 U.S. at 691.

Petitioner has never asserted at any time since the entry of his guilty plea he did not commit the acts to which he pled guilty, let alone suggested there was any potential defense to the charge to which he pleaded guilty, or for that matter, any of the charges in the indictment. To the contrary, Petitioner signed the Plea Agreement stating the factual basis for the plea. Plea Agreement, p. 2. He listened to the factual basis for the plea provided by

15

TFO Danko and when asked by Judge Hall, Petitioner stated there was nothing in the testimony with which he disagreed. Rule 11 Tr. 17-21. The uncontested facts in the PSI, as well as the testimony provided by TFO Danko at the change of plea proceedings and at sentencing, describe Petitioner's extensive involvement in a conspiracy to distribute methamphetamine.[2] PSI ¶¶ 12-19.

Judge Hall summarized the evidence against Petitioner at sentencing as showing his leadership role in criminal activity involving, "at a minimum," five or more participants, for whom Petitioner printed t-shirts and provided vehicles to distribute methamphetamine. Sent. Tr. 22-23. Moreover, prior to these § 2255 proceedings, Petitioner touted himself as the biggest dealer in this area and bragged one would have to go to Atlanta to find bigger, and he sported t-shirts and a back tattoo emblazoned with the word "BO$$." Id. at 23-24; PSI ¶¶ 12-19. Nothing in Petitioner's belated allegations, devoid of any factual specificity, about alleged ineffective assistance from Mr. Brown concerning discovery and possible defenses establish deficient performance or prejudice.

### 3. Petitioner's Claim In Ground One (c) Forms No Basis for Relief.

As to the claim in Ground One (c) concerning allegedly incorrect information about the Sentencing Guidelines range Petitioner faced, that claim also fails. Even if the Court were to accept for the sake of argument that Mr. Brown did not provide an exactly correct prophesy of Petitioner's potential sentence, Petitioner cannot show the requisite prejudice. So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the

---

[2]At sentencing, facts not objected to in the PSI are deemed admitted. See United States v. Bennett, 472 F. 3d 825, 833-34 (11th Cir. 2006).

possibility for enhancements under the Guidelines. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (*per curiam*) (affirming district court's refusal to allow withdrawal of guilty plea with finding that defendant failed to show plea was not entered knowingly and voluntarily where judge at plea hearing set forth maximum possible penalties and fact that court was not bound by counsel's sentencing estimates).

At the Rule 11 proceedings, prior to accepting the guilty plea, Judge Hall reviewed the possible statutory penalty of not less than five years nor more than forty years of imprisonment. Rule 11 Tr. 12. Moreover, Petitioner swore to Judge Hall no one had promised him he would receive any particular sentence. Id. at 15. The Plea Agreement also recounted the possible statutory penalties, explained how the Court would utilize the advisory Guidelines in fashioning a sentence, and verified no one had promised Petitioner a particular sentence "or a sentence within any particular range." Plea Agreement, pp. 2-3. Petitioner has not shown the requisite prejudice.

### C. Petitioner Has Not Established He Is Entitled to Relief on Ground Two Based on His Claims Concerning Mr. Brown's Performance at Sentencing.

Petitioner also asserts Mr. Brown provided ineffective assistance by not arguing for a downward departure from the advisory Guidelines range. According to Petitioner, counsel should have argued for a downward departure based on Petitioner's age, lack of criminal record, and that "the methamphetamine guidelines are not based on any empirical evidence,"

17

resulting in "unjustly punitive sentences that are greater than necessary to meet the purposes of sentencing under § 3553(a)." (Doc. no. 1, p. 7.) The record does not support Petitioner's argument.

Contrary to Petitioner's representations, Mr. Brown did argue for a downward departure based on Petitioner's young age and lack of criminal history, and the non-violent nature of the offense. Sent. Tr. 25. Mr. Brown argued the Guidelines range was "overly excessive" punishment for a twenty-five year old with no prior criminal history who had not "harmed any individuals by threat or violence." Id. However, as set forth in detail in Part I(C), *supra*, Judge Hall rejected the arguments, and gave a detailed explanation of the § 3553(a) factors he considered in fashioning a sentence. Those factors, among others, included the need to provide just punishment for leading an organization that distributed large amounts of methamphetamine to multiple individuals, as well as Petitioner's lack of respect for the law despite an arrest at the state level and an opportunity to end his criminal activity. Id. at 27-28.

As Respondent succinctly summarizes, "Thus, the record shows that counsel, in fact, did what [Petitioner] is now claiming counsel did not do. [Petitioner] cannot show that the Court would have varied downwardly had counsel filed a written argument supporting his oral request." (Doc. no. 4, p. 17.) Nor does Petitioner identify any of the "policy grounds" on which Mr. Brown could, or should, have raised to argue "the methamphetamine guidelines are not based on any empirical evidence." (Doc. no. 1, p. 7.) Petitioner has not shown deficient performance or prejudice from Mr. Brown's presentation at sentencing, and he is not entitled to relief on Ground Two.

18

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 29th day of November, 2017, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA